**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **AKBAR JALALI** § | **CIVIL ACTION NO:** | |
| § | | |
| *Plaintiff* § | | |
| **v.** § | | |
| § | | |
| **FOREST RIVER, INC.** § | | |
| § | | |
| *Defendant* § | **JURY TRIAL REQUESTED** | |

**COMPLAINT**

**I.   Parties**

1.   Plaintiff, AKBAR JALALI, is an individual that is now and has been at all times a citizen of state of Ohio.

2.   Defendant, FOREST RIVER, INC., hereinafter "FOREST RIVER," is a citizen of Indiana and an Indiana corporation authorized to do and doing business in the State of Texas with its principal place of business located in Elkhart, Indiana and is a warrantor of the recreational vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case.

FOREST RIVER's agent for service of process is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN, 46204.

**II.   Jurisdiction**

3.   This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's

-1-

state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III. Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

5. All conditions precedents have been performed or have occurred. Plaintiff sent the Defendant, Forest River, Inc., the required notice and opportunity to repair his RV letter to Forest River, Inc., 55470 CR 1, P.O. Box 3030, Elkhart, Indiana 46515-3030, which was received by the Defendant on September 21, 2022.

### V. Facts

#### A. The Transaction

6. On May 6, 2022, Plaintiff purchased a new 2022 FOREST RIVER SIERRA LUXURY RV 388BHRD bearing VIN: 4X4FSER20NJ050902, hereinafter "SIERRA," from ALL AMERICAN COACH CO. in Lucas County, Ohio. The "SIERRA" was purchased primarily for Plaintiff's personal use.

7. The sales price of the SIERRA was $74,876.39. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.*, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** ***Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL**

**1011500 (E.D. Mo. Apr. 15, 2009).**

## B. Implied Warranties

8. As a result of the sale of the SIERRA by Defendant to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the SIERRA would pass without objection in the trade under the contract description; and that the SIERRA was fit for the ordinary purpose for which such motor vehicles are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

## C. Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the SIERRA, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the SIERRA had, in fact, repaired the defects.

11. Plaintiff's purchase of the SIERRA was accompanied by express warranties offered by the Defendant, FOREST RIVER, and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the SIERRA.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the FOREST RIVER's warranty booklet and owners manual.

### D. Actionable Conduct

13. In fact, when delivered, the SIERRA was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to the following:

> **"We purchased the RV May 6, 2022. While at the dealership they had to replace the locks on the door side storage under the rear bunk. The locks were completely not aligned. They had to patch some places on the roof. There was paint damage on the front, door side. They said they would note it with the manufacturer so it could be fixed. We found out later they never did that initially.**
>
> **We had our first trip in August 2022. We immediately found multiple issues. The list is as follows:**
>
> **The bedroom slide**
> **The door side bunk room slide**
> **The bunkroom pull out sofa**
> **The floors in the kitchen**
> **The refrigerator is loose and not stable**
> **The door under the kitchen sink**
> **The microwave vent**
> **Roof dry rotted**
> **Gutter leaks water and residue coming in**
> **Black and Gray tank sensors are not reading properly**
> **Paint on the front and door side of bunk room slide of the RV has defects**
> **Command Center does not connect**
> **Rear A/C air not flowing properly**
> **Bathroom glass shower door leaks water onto bathroom floor from the frame**
> **Leaking water into the storage under bedroom slide**
> **Excessive wood chip and residue constantly drops in the rear slide storage**
> **Holes for central vacuum missing**
> **Multiple cabinet doors warped**
> **Most electric outlets and lights switch covers broken**
> **Bunk room entertainment area wood is broken at the bottom**
> **Off Door bunk bed top bunk bed latch is installed incorrectly therefore trim is damaged also the same bunk bed stoppers were**

**loose and broken and someone put bigger screws**
**Door side water hose cover was broken**
**Overall caulking around the RV was loose**
**Rear off door side panel was bent out of shape with dents looks like a previous repair**

**We actually had to call an emergency repair man the day we were supposed to leave in order to have the door side back bunk slide closed. He had to override it so it could be manually closed.**

**After the trip we contacted camping world so we could have the repairs made under the warranty. The RV was dropped off Oct 22, 2022 and remained there until June 16, 2023. They told us that the RV would be ready in December,2022. In March 2023, I contacted the claims rep at Forest River because we were getting the run around from camping world and nothing was being done. After that we were called to camping world multiple times to get the RV saying it was ready and when we would get there we found several things that had not been addressed that they forgot about. It's a 45 minute drive each way for us to get to camping world. They also damaged the door and had to replace it. On June 16, 2023 we were told our RV was ready and that the list was finally complete. When we got there we still noticed issues and the door is a mess. We were told by the general manager that he would not talk to us and would not be doing anything further since there was a legal matter pending. We were required to take the RV. The following is the list of things we are still having issues with. They either weren't actually repaired or not repaired properly.**

**The refrigerator is loose again.**
**The bunk room sofa couch is broken and not closing again.**
**The door doesn't lock all the way and when you close it, it automatically locks from inside. Good thing we had an extra key in the truck, it happened twice.**
**The bunk room slide is getting stuck again.**
**The bedroom slide is still loose.**
**The door under the kitchen sink is still broke.**
**The screws that attach the frame to the door split the wood.**
**The microwave vent outside that you installed broke again, it flew off. You can see by the frame of the vent that your tech installed it's all crooked and was forced in there. That's why it keeps**

**breaking. There are still wood chips and residue coming inside the rear storage.**
**The water leak from the gutter still exists**
**Both black tanks are still showing up to the first sensor even though they were flushed out multiple times with chemicals.**
**Both gray tanks are showing half full even though they were completely emptied. Nothing can cover those sensors in the gray tanks because it's just soapy water. Which means the sensors are bad as we mentioned before.**

**We did notify camping world via email on July 17, 2023 of the items that are still an issue. We mailed a letter to Forest River on July 24, 2023 letting them know as well that we are still having issues. Neither have responded.**

14. Since purchase, Plaintiff has returned their SIERRA to the Defendant and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant were given the opportunity to repair the SIERRA, the more significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the SIERRA, continues to this day to exhibit some or all of the non-conformities described herein.

15. The defects experienced by Plaintiff with the SIERRA substantially impaired its use, value and safety.

16. Plaintiff notified the Defendant of the defective conditions in the SIERRA.

## VI.  Causes of Action

**COUNT 1:   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

17. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter

"Warranty Act"), 15 U.S.C. § 2301(3).

19. Defendant is a "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

20. The SIERRA is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

21. The express warranties more fully described hereinabove pertaining to the SIERRA is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

22. The actions of Defendant in failing to tender the SIERRA to Plaintiff free of defects and refusing to repair or replace the defective SIERRA tendered to Plaintiffs constitute a breach of the written and implied warranties covering the SIERRA and hence a violation of the Magnuson-Moss Warranty Act.

23. Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

24. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $100,000.00 according to proof at trial.

25. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of

Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   BREACH OF EXPRESS WARRANTIES**

26.   Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

27.   The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's SIERRA or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the SIERRA and warranted that the SIERRA was free of defects in materials and work quality at the time of delivery.

28.   As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiff a SIERRA that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

29.   In breach of the foregoing warranties, the Defendant has failed to correct said defects.

30.   The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 3:   BREACH OF IMPLIED WARRANTIES**

31.   Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32.   The Defendant impliedly warranted that Plaintiff's SIERRA which it designed,

-8-

manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

33. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the SIERRA had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiff.

34. Because of the defects, Plaintiff's SIERRA is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendant breached the implied warranty of merchantability.

35. The damages Plaintiff has suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 4: OHIO CONSUMER SALES PRACTICES ACT**

36. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

37. This claim is for violation of the Ohio Consumer Sales Practices Act, O.R.C. 1345.01 et seq, by the Manufacturer.

38. Before, during or after one or more consumers transactions between a supplier and a consumer, defendant:

(1) represented that the subject of a consumer transaction had performance

        characteristics, accessories, uses, or benefits that it did not have;

  (2)    represented that the subject of a consumer transaction was of a particular standard and/or quality when it is not;

  (3)    represented that the subject of a consumer transaction had been supplied in accordance with a previous representation, when it had not;

  (4)    represented that a specific price advantage existed when it did not;

  (5)    knowingly took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance, or illiteracy or inability to understand the language of an agreement;

  (6)    knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

  (7)    required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier; and

  (8)    knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

39. The Defendant violated the Magnuson Moss Warranty Act in one or more manners, and knew, or should have known that doing so would be unfair to the Plaintiff, and did it anyway, and that was unfair and/or deceptive and/or unconscionable to the Plaintiff.

40. The Defendant breached and/or failed to honor its express and/or implied warranties to Plaintiff, and had a legal obligation to Plaintiff with no valid legal defense for not performing those obligations, but avoided, or attempted to avoid, one or more of its obligations. Defendant knew, or should have known, that doing so would be unfair to the Plaintiff, but did it anyway, and that was unfair and/or deceptive and/or unconscionable to the Plaintiff.

41. The Defendant may have committed one or more other unfair and/or deceptive and/or unconscionable acts or practices in its transactions with Plaintiff within two years prior to the filing

of this case.

42.  As a result of the above, inter alia, Defendant committed one or more unfair and/or deceptive and/or unconscionable acts and/or practices in violation of the Consumer Act, before, during, or after a consumer transaction between Plaintiff and a supplier in relation to the SIERRA.

## VII. Economic and Actual Damages

43.  Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

   b. Benefit of the Bargain Rule.  The difference between the value of the goods and services would have had if they had been as promised and their value as delivered.

   c. Costs of Repairs.

   d. Loss Profits.

   e. Loss of Use.

   f. Diminished or reduced market value.

   g. Damages for Mental Anguish.

## VIII. Attorney Fees and Costs

44.  Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and

expenses in connection therewith.

## IX.  Prayer

45. For these reasons, Plaintiff prays for judgment against the Defendant for the following:

    a. For general, special and actual damages according to proof at trial;

    b. For incidental and consequential damages according to proof at trial;

    c. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    d. Any diminution in value of the SIERRA attributable to the defects;

    e. Past and future economic losses;

    f. Prejudgment and post-judgment interest;

    g. Damages for loss of use of vehicle;

    h. Civil Penalties and/or Punitive damages;

    i. Damages for mental anguish;

    j. Attorney fees;

    k. Costs of suit, expert fees and litigation expenses; and

    l. All other relief this Honorable Court deems appropriate.

## X.  Demand for Jury Trial

46. Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF